UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, | No.  2:12-cv-2974 KJM AC |
| Plaintiff, | |
| v. | ORDER |
| AMERIGAS PARTNERS, L.P., | |
| Defendant. | |

On March 19, 2014, this court granted the motion for summary judgment filed by defendant AmeriGas Partners.  ECF No. 45.  On April 16, 2014, plaintiff Miller filed a motion for reconsideration of this order.  ECF No. 49.  The court ordered it submitted without argument.  As discussed below, the court denies the motion for reconsideration.

I.  BACKGROUND

On October 31, 2012, Miller filed a complaint in Mono County Superior Court alleging generally that he had been employed as a District Manager by Heritage Propane in Mammoth Lakes, California since 1997; in October 2011, Heritage announced that its rival AmeriGas had acquired Heritage; in January 2012, Heritage employees received a transition packet from AmeriGas, including a "Confidentiality and Post Employment Agreement" providing that any employee would not solicit AmeriGas employees or sell propane within a fifty mile radius from an AmeriGas District Office for two years after leaving AmeriGas; Miller refused to

1

1    sign the agreement; AmeriGas let employees know there would be some layoffs because, for

2    example, there could be only one manager in an area that had had both Heritage and AmeriGas

3    offices; within a month of his second refusal to sign the agreement, plaintiff was interviewed for

4    the position of manager of the combined Bishop/Mammoth Lakes region; about a month after the

5    interview Lisa Thomas, one of the interviewers, arrived at the Mammoth Lakes office, and

6    informed plaintiff he had not been selected for the manager position.  ECF No. 1-1 at 8-14. The

7    complaint contains two claims: (1) wrongful termination in violation of public policy; and (2)

8    unfair business practices in violation of California Business and Professions Code §§ 17200, et

9    seq.

10          On December 10, 2012, AmeriGas removed the case to this court. ECF No. 1.  It

11    filed its motion for summary judgment on December 20, 2013, arguing that Miller had not

12    established a nexus between the public policy at stake and his termination.  Mot. for Summ. J.,

13    ECF No. 21 at 13.  In opposition, plaintiff contended he was terminated because he refused to

14    sign the illegal confidentiality agreement and that "[d]efendant's suggestion that it terminated

15    Plaintiff based exclusively on information gleaned from an impartial interview process is a farce

16    and clear evidence of pretext."  Opp'n, ECF No. 34 at 6.

17          On March 19, 2014, the court granted defendant's motion, evaluating the claim by

18    applying the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

19    802-04 (1973).  ECF No. 45.  On April 16, 2014  Plaintiff argues that *McDonnell Douglas* does

20    not apply to non-FEHA based claims of wrongful discharge in violation of public policy.  Mot.

21    for Recons., ECF No. 49.

22    II.  STANDARDS FOR A MOTION FOR RECONSIDERATION

23          Under Rule 59(e), a party may move to "alter or amend a judgment" within

24    twenty-eight days of the entry of the judgment.  Although the Rule does not list specific grounds

25    for such a motion, the Ninth Circuit has said that a Rule 59(e) motion may be granted if "(1) the

26    district court is presented with newly discovered evidence, (2) the district court committed clear

27    error or made an initial decision that was manifestly unjust, or (3) there is an intervening change

28    in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).  This

1    court has "wide discretion" when considering such a motion.  *Turner v. Burlington N. Santa Fe*

2    *R.R. Co*., 338 F.3d 1058, 1063 (9th Cir. 2003).  The rule provides "an 'extraordinary remedy, to

3    be used sparingly in the interests of finality and conservation of judicial resources.'"  *Kona*

4    *Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting James Wm. Moore et

5    al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).  A party filing a motion for

6    reconsideration should not ask the court "to rethink what the Court has already thought through"

7    simply because of a disagreement with the result of that thought process.  *Above the Belt, Inc. v.*

8    *Mel Bohannan Roofing, Inc*., 99 F.R.D. 99, 101 (E.D. Va. 1983).   A motion to amend the

9    judgment "is a proper vehicle for seeking reconsideration of a summary judgment ruling." *Tripati*

10   *v. Henman*, 845 F.2d 205, 206 n.1 (9th Cir. 1988) (per curiam).

11              As explained below, plaintiff has not shown the court committed clear error in its

12   analysis of his wrongful discharge claim nor that any interpretation of the evidence had an impact

13   on the outcome of the case.

14   III.  ANALYSIS

15       A.  Wrongful Discharge And Burden Shifting

16              Plaintiff argues that the court committed clear error in applying the *McDonnell*

17   *Douglas* framework to evaluate the motion.   He acknowledges that courts have indeed applied

18   this analytic tool to wrongful discharge claims, but says it is limited to wrongful termination

19   claims based on California Government Code section 12940, which proscribes retaliation against

20   an employee who complains about practices forbidden under California's Fair Employment and

21   Housing Act (FEHA).  CAL. GOV'T CODE §§ 12900, *et seq*.  He argues that the framework is not

22   applied to claims of wrongful discharge in violation of public policy, so-called *Tameny*[1] claims.

23   /////

24   /////

25   /////

26   /////

27

28   [1]  *Tameny v. Atlantic Richfield Company*, 27 Cal. 3d 167 (1980).

1    In *Loggins v. Kaiser Permanente International*,  the California Court of Appeal

2    said:

3    When a plaintiff alleges retaliatory employment termination either
     as a claim under the FEHA or as a claim for wrongful termination
4    in violation of public policy, and the defendant seeks summary
     judgment, California follows the burden shifting analysis of
5    *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct.
     1817, 36 L.Ed. 2d 668 to determine whether there are triable issues
6    of fact for resolution by a jury.

7    151 Cal. App. 4th 1102, 1108-09 (2007).   Plaintiff acknowledges this statement, but says because

8    the wrongful discharge claim  in *Loggins* was based on an underlying FEHA violation, the court's

9    application of *McDonnell Douglas* is also limited to FEHA-based claims.  ECF No. 49 at 5.

10   Plaintiff cites cases he claims show that courts apply the *McDonnell Douglas* framework to

11   FEHA-based *Tameny* claims, but not to *Tameny* claims based on other policies.

12   First, plaintiff relies on two unpublished cases, *Black v. Baxter Healthcare*

13   *Corporation,* 129 F.3d 124 (Table) (9th Cir. 1997) (unpublished) and *Waddy v. Sears, Roebuck &*

14   *Co.,* 97 F.3d 1463 (Table) (9th Cir. 1996) (unpublished); as these cases were decided before

15   January 1, 2007, they are not citable.  FED. R. APP. P. 32.1(a)(ii).

16   Plaintiff then cites to *Anthoine v. North Central Counties Consortium*, 571 F.

17   Supp. 2d 1173, 1192-93 (E.D. Cal. 2008), *aff'd in part, rev'd in part*, 605 F.3d 740 (9th Cir

18   2010).  In that case, the court did not apply any sort of analytical framework to a wrongful

19   discharge claim based on California's free speech and Workforce Investment Act (WIA) because

20   plaintiff had not established his speech was constitutionally protected and had not identified the

21   provisions of the WIA upon which his claim was based.  Plaintiff suggests that in *Gutierrez v.*

22   *Kaiser Foundation Hospital*, the court applied *McDonnell Douglas* to the FEHA claims, but not

23   to a *Tameny* claim based on the California Constitution's prohibition against discrimination.  In

24   *Gutierrez*, however, the court did not undertake any analysis of the *Tameny* claims because it

25   found plaintiff had not shown his underlying discrimination claims had any merit.  No. C 11–

26   3428 CW, 2012 WL 5372607, at *9 (N.D. Cal. Oct. 30, 2012).

27   Plaintiff characterizes *Villasenor v. Sears, Roebuck & Co*. as applying *McDonnell*

28   *Douglas* to a FEHA retaliation claim, but not to a claim of retaliation stemming from the

4

1    plaintiff's complaints about meal and rest breaks.  In that case, however, the court found the

2    plaintiff had not shown a causal connection between his complaints and his termination and did

3    not discuss whether *McDonnell Douglas* would apply to the latter claim.  No. CV 09-9147

4    (FMOx), 2011 WL 165374, at \*10 (C.D. Cal. Jan. 18, 2011).  Plaintiff also relies on *Markey v.*

5    *Kudelski S.A,* which used the burden-shifting framework to evaluate the FEHA discrimination

6    claims, but found that plaintiff had not shown his termination violated any public policy.  No. 06-

7    CV-1300 W (RBB), 2008 WL 65401, at \*12 (S.D. Cal. Jan. 3, 2008); *see also Yocum v.*

8    *Rockwell*, No. 3:12–cv–0568–GPC–MDD, 2013 WL 1828573, at \*6-7 (granting defendant's

9    motion for summary judgment because plaintiff had not shown a nexus between protected

10   conduct and discharge and stating that, therefore, it need not address defendant's claim the

11   termination was based on legitimate reasons).  Finally, plaintiff cites to *Walker v. Boeing Corp.* as

12   a case that "properly evaluat[ed]"  a motion for summary judgment in a non-FEHA wrongful

13   discharge by not relying on *McDonnell Douglas* to evaluate the claim.  He is correct that the court

14   in *Walker* does not mention *McDonnell Douglas*, but overlooks the fact that the court said that

15   even if the plaintiff had shown his discharge was retaliatory, he had failed to rebut the defendant's

16   showing of a non-retaliatory reason for the discharge and had produced no evidence of pretext.

17   218 F. Supp. 2d 1177, 1188-89 (C.D. Cal. 2002).  This court may not have cited to the case from

18   a sister district previously, but it applied the analysis nevertheless.

19          The only one of plaintiff's authorities that denies a motion for summary judgment

20   of a non-FEHA *Tameny* claim, based only on plaintiff's demonstration of a nexus between

21   protected activity and discharge, is *Stoval v. Basin Street Properties*, 3:12-cv-04661 JST, 2013

22   WL 6002758 (N.D. Cal. Nov. 12, 2013).  In that case, the court evaluated only whether the

23   plaintiff had established a nexus between his report of a statutory violation and his termination,

24   and did not address any of the other steps in the *McDonnell Douglas* analysis.  *Id*. at \*5-6.  The

25   court did not say, however, that application of the analytic framework was improper.

26          Plaintiff acknowledges that some courts have applied the burden-shifting method

27   to non-FEHA-based wrongful discharge cases, including the Ninth Circuit in an unpublished

28   case, but argues those cases were wrongly decided.  *See, e.g., Mitri v. Walgreen Co, Inc*., No.

5

1    1:10-cv-538 AWI SKO, 2011 WL 2181387 (E.D. Cal. Jun. 3, 2011); *Weingand v. Harland Fin.*

2    *Solutions*, No. C-11-3109, 2012 WL 3537035, at *8 (N.D. Cal. Aug. 14, 2012) (dicta); *Hess v.*

3    *Madera Honda Suzuki*, No. 1:10-cv-01821 AWI BAM, 2012 WL 4052002, at *11 (E.D. Cal.

4    Sept. 14, 2012); *see also Steffens v. Regis Grp. PLC*, 485 F. App'x 187, at *1 (9th Cir. Jun. 26,

5    2012) (unpublished); *Minnard v. Rotech Healthcare, Inc*., No. 2:06-cv-1460-GEB GGH, 2008

6    WL 2169716, at *8 (E.D. Cal. May 22, 2008).  Plaintiff claims these cases are wrongly decided

7    because they do not recognize the difference between the elements of a retaliation claim and a

8    wrongful discharge claim.

9
10
11
12
> Wrongful termination cases typically arise when an employer
> retaliates against an employee for refusing to violate a statute,
> performing a statutory obligation, exercising a statutory right, or
> reporting an alleged violation of a statute of public importance.
> However, . . . an action for tortious discharge is not strictly limited
> to these situations but will lie whenever the basis of the discharge
> contravenes a public policy.

13   *Gould v. Md. Sound Indus*., 31 Cal. App. 4th 1137, 1147 (1995) (citation and internal quotations

14   omitted); *Blom v. N.G.K. Spark Plugs (U.S.A.), Inc*., 3 Cal. App. 4th 382, 389 (1992) ("*Tameny*

15   and its progeny confirm, implicitly and explicitly, that discharge of an employee for resisting

16   employer violations of laws that secure important public policies contravenes those policies, and

17   gives rise to a common law action in tort.").  Because a *Tameny* claim is, in most instances, a

18   claim that the employer retaliated in response to the employee's assertion of some public interest,

19   application of *McDonnell Douglas* to such a claim makes sense, just as it made sense to apply the

20   framework to a FEHA-based *Tameny* claim in *Loggins*.  The nexus between the protected activity

21   (plaintiff's refusal to sign the confidentiality agreement in this case) and the employment decision

22   (defendant's refusal to hire plaintiff for the combined District Manager position and his ultimate

23   discharge) is relevant, as plaintiff argues, but it is only part of plaintiff's prima facie case.  *Chen*

24   *v. Cnty. of Orange*, 96 Cal. App. 4th 926, 949 (2002); *Minnard*, 2008 WL 2169716, at *8.  Had

25   plaintiff not made a sufficient showing of nexus, the court never would have reached the burden-

26   shifting portion of its analysis.  *See Yocum v. Rockwell*, No. 3:12–cv–0568–GPC–MDD, 2013

27   WL 1828573, at *6-7 (S.D. Cal. Apr. 30, 2013) (saying it did not need to consider employer's

28   proffered legitimate reason for discharge when it did not find a nexus between protected activity

1    and discharge); *Y.K.A Indus., Inc. v. Redev. Agency of the City of San Jose*, 174 Cal. App. 4th

2    339, 340 (2009) (saying a party who makes a prima facie showing is not entitled to a judgment as

3    a matter of law but is entitled to consideration by the trier of fact).  In this case, the court found

4    plaintiff's evidence of causal connection was sufficient to establish his prima facie case and so

5    proceeded to the next steps.  That a few courts have truncated the analysis does not demonstrate

6    clear error here.

7              Plaintiff also argues application of the *McDonnell Douglas* framework creates a

8    manifest injustice because he was surprised by the court's analysis and so was not prepared to

9    address it.  ECF No. 49 at 3.  Even though neither party referred directly to the doctrine, plaintiff

10   used its language in his opposition, attacking defendant's showing of a legitimate reason for the

11   termination and citing to evidence he believed showed the reason to be pretextual.  ECF No. 6,

12   13.  Moreover, as defendant observes, during argument on the motion, the defendant's counsel

13   addressed plaintiff's prima facie case  and its reasons for the discharge, prompting the court to ask

14   plaintiff's counsel about his evidence of pretext, assuming the burden had shifted back to him.

15   Hrg. Tr., ECF No. 50, at 8:8-16.  Plaintiff has not shown he was detrimentally surprised by the

16   analysis.

17              B.  Evidentiary Issues

18              Plaintiff first makes the somewhat puzzling claim that the court overlooked the

19   confidentiality agreement in its analysis.  Citing to *D'sa v. Playhut, Inc.*, the court recognized that

20   plaintiff's refusal to sign the confidentiality agreement, which is arguably illegal under California

21   law, was the basis of plaintiff's *Tameny* claim.  ECF No. 45 at 9 (citing to 85 Cal. App. 4th 927

22   (2001)).

23              Plaintiff next argues the court misinterpreted Richard Martinelli's email to Shirley

24   Kelley reporting a conversation he had with plaintiff, in which Martinelli said he told plaintiff

25   that the final decision about the District Manager position was "in each Area Director [*sic*] hands

26   along with the interview process results."  ECF No. 31 at 63.  Plaintiff challenges the court's

27   interpretation, saying the e-mail is more reasonably read to mean that both the final decision and

28   the results of the interview process were controlled by the Area Director, rather than that the final

7

1  hiring decision was based on both the Area Director's decision coupled with the results of the

2  interview process.  Accepting plaintiff's reading does not defeat summary judgment.  The

3  inference that Area Director Lisa Thomas alone made the hiring decision supports plaintiff's

4  showing of the nexus between his refusal to sign the confidentiality agreement and his

5  termination, as Thomas was aware of plaintiff's refusal.  As the court previously found plaintiff

6  had shown a sufficient nexus to establish his prima facie case, accepting plaintiff's interpretation

7  of the evidence does not change the ultimate result.

8          This reasoning addresses plaintiff's claim that the court misinterpreted the snippet

9  of Thomas's deposition testimony about her control over the hiring process.  During questioning

10  about the candidates' safety record, Thomas said, "[a]nd that you're starting from scratch from

11  day one, once you offer that position to the person, going forward.  He was going to be on my

12  team going forward.  Anybody that I chose."  ECF No. 31 at 52:4-7.  Once again, even assuming

13  this means Thomas had total control over the hiring process, it bolsters plaintiff's prima facie

14  case.  Accepting plaintiff's interpretation of the statement, despite its context, does not change the

15  ultimate result.

16          IT IS THEREFORE ORDERED that plaintiff's motion for reconsideration, ECF

17  No. 49, is denied.

18  DATED:  July 8, 2014.

20  _____
    UNITED STATES DISTRICT JUDGE

8